UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENISE SIMONEAU,<br><br>            Plaintiff,<br><br>v.<br><br>STRYKER CORPORATION; HOWMEDICA OSTEONICS CORP.; WINDHAM COMMUNITY AND MEMORIAL HOSPITAL,<br><br>            Defendants. | Case No.:  3:13-CV-01200 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants Stryker Corporation ("Stryker") and Howmedica Osteonics Corp. ("HOC"), by and through their undersigned counsel, remove the state court action captioned Denise Simoneau v. Stryker Corporation et al., Case No. WWM-CV13-6007178-S ("Action"), from the Superior Court of the State of Connecticut, Judicial District of Windham at Putnam, to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. The grounds for removal are as follows:

### THE REMOVED CASE

1.      The removed case is a medical device products liability action, which Plaintiff Denise Simoneau ("Plaintiff") filed on or about July 29, 2013, in the Superior Court of the State of Connecticut, Judicial District of Windham at Putnam.

2.      Plaintiff alleges that she received a Trident™ Ceramic on Ceramic Acetabular System ("Trident™ System") at "St. Francis" on or about December 19, 2003. (See Complaint, annexed hereto as Exhibit A, at First Count, ¶ 6; id. at Exhibit A.) Plaintiff then alleges that she sustained injuries as a result of the implantation of a Trident™ System, an artificial hip

prosthesis "designed, manufactured and marketed by the Stryker Defendants". (Id. at First Count, ¶¶ 6, 20-22.) Plaintiff asserts claims against Stryker and HOC for "products liability" and negligence. (See id. at First Count, ¶¶ 1-29; Count Two, ¶¶ 26-28.) Plaintiff also attempts to assert a claim against Windham Community Memorial Hospital -- the hospital at which Plaintiff allegedly underwent hip aspirations in September 2011 and October 2012 -- for the negligent failure to advise or warn Plaintiff of alleged recalls of the Trident™ System. (See id. at Count Three, ¶¶ 1-8.) Plaintiff seeks to recover damages exceeding $15,000 from all defendants. (See id. at p.15.)

## PAPERS FROM REMOVED ACTION

3.  Pursuant to 28 U.S.C. § 1446(a), Stryker and HOC attach to this Notice of Removal a copy of all pleadings, orders and other papers or exhibits of every kind currently on file in the state court action. (See Exhibit A, Summons and Complaint and Exhibit B, the remainder of all pleadings and other papers filed in the state court action.)

## REMOVAL IS TIMELY

4.  Removal is timely because it is made within 30 days of service of the Summons and Complaint upon Stryker and HOC. See 28 U.S.C. § 1446(b) ("[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based"). HOC was served with the Summons and Complaint on or about July 22, 2013; and Stryker was served the Summons and Complaint on or about July 23, 2013. As such, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b). See, e.g., Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 355 (1999) (removal time frame triggered by receipt of *formal* service; not receipt of complaint).

## DIVERSITY OF CITIZENSHIP EXISTS
## BETWEEN THE PROPERLY JOINED PARTIES

5.   This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332, and thus may be removed to this Court on that basis pursuant to 28 U.S.C. §§ 1441 and 1446.

6.   At all times material hereto, Plaintiff alleges that she "was a resident of the Town of North Windham, County of Windham and State of Connecticut." (See Complaint at First Count, ¶ 1.)

7.   At all times material hereto, HOC was and is a New Jersey corporation with its principal place of business in New Jersey.

8.   At all times material hereto, Stryker was and is a Michigan corporation with its principal place of business in Michigan.

9.   According to Plaintiff, at all times material hereto, "the Defendant Windham Community Memorial Hospital was a Connecticut Corporation with principal place of business located at 112 Mansfield Avenue, Willimantic, Connecticut." (Id. at Count Three, ¶ 2.) As shown below, Windham Community Memorial Hospital ("Windham") was fraudulently joined, and its presence in this action cannot be considered in determining whether diversity jurisdiction exists for purposes of removal. See Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2d Cir. 1998). Moreover, because Windham is a fraudulently joined defendant, its consent is not required for purposes of removal. See In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001).

10.  Accordingly, because Plaintiff is a citizen of Connecticut, Stryker is a citizen of Michigan, and HOC is a citizen of New Jersey, complete diversity exists under 28 U.S.C. § 1332.

### A. Windham Has Been Fraudulently Joined

11. The Second Circuit has long recognized that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection to the controversy." Pampillonia, 138 F.3d at 460-61. "Such a tactic is referred to as a 'fraudulent joinder.'" Minor Child of John Doe v. Fed. Express Corp., No. 3:05cv1968 (WWE), 2006 U.S. Dist. LEXIS 31825, at *3 (D. Conn. May 22, 2006). Fraudulent joinder is a judicially created doctrine that allows an exception to the requirement of complete diversity whereby "courts overlook the presence of a non-diverse defendant". Thompson v. Accent Capital, Civ. No. 3:11CV00069 (AWT), 2011 U.S. Dist. LEXIS 92090, at *3 (D. Conn. Aug. 18, 2011); Jevarjian v. Fidelity Nat'l Title Ins. Co., Civil Action Nos. 3:06-cv-01666 (VLB), 3:07-cv-00091 (VLB), 2007 U.S. Dist. LEXIS 63216, at *3 (D. Conn. Aug. 28, 2007).[1]

12. A party advocating a finding of fraudulent joinder must show "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."[2] Pampillonia, 138 F.3d at 461; accord Thompson, 2011 U.S. Dist. LEXIS 92090, at *3-4; Jevarjian, 2007 U.S. Dist. LEXIS 63216, at *3; Doe, 2006 U.S. Dist. LEXIS 31825, at *3-4.

13. Notably, the "no possibility" standard "cannot be taken literally." In re Rezulin, 133 at 280 n.4. As this very Court has recognized, "The language 'no possibility' has been interpreted as meaning no 'reasonable possibility' or 'no reasonable basis.'" Doe, 2006 U.S. Dist. LEXIS 31825, at *4 (citing In re Rezulin, 133 at 280 n.4).

---

[1] All unreported cases are annexed hereto as Exhibit C.

[2] A party advocating a finding of fraudulent joinder may also show "that there has been outright fraud committed in the plaintiff's pleadings...." Pampillonia, 138 F.3d at 461.

14. Here, there is no possibility that -- or no reasonable basis upon which -- Plaintiff can state a cause of action against Windham because Connecticut does not recognize a cause of action against a hospital for the negligent failure to advise or warn a patient of alleged medical device recalls.

15. In the Complaint, Plaintiff makes only the following allegations regarding its claim against Windham:

> 3. On or about June 12, 2008, the Stryker Defendants initiated a recall of certain Trident Hemispherical Acetabular Cluster shells....
>
> 4. On August 4, 2009, the Stryker Defendants recalled Trident Acetabular System Surgical Protocol instructions for use of hip prosthesis, and issued new surgical protocol instructions....
>
> 5. On or about September 14, 2009, the Defendants initiated a recall of Cancellous Bone Screws....
>
> 6. At the time that the hip aspirations were performed on Plaintiff [at Windham] in September, 2011 and October, 2012, Defendant Windham Hospital knew or should have known that the Hemispherical Acetabular Cluster shell and the Cancellous Bone Screws had been recalled by the Stryker Defendants due to, *inter alia*, excessive foreign material and manufacturing residuals.
>
> 7. The Defendant Windham Hospital owed a duty to advise and warn the Plaintiff of the aforesaid Recalls and alert her to the possibility that it was a defective Trident Hip Implant ... and the Defendant's failure to do so, constitutes a breach of its duty of reasonable care.

(Complaint at Count Three, ¶¶ 3-7.)

16. Plaintiff's sole basis upon which she seeks damages from Windham is for the purported negligent failure of Windham to advise or warn her that Stryker and HOC had allegedly initiated recalls of "certain Trident Hemispherical Acetabular Cluster shells", "Surgical Protocol instructions", and "Cancellous Bone Screws". A medical malpractice claim in

Connecticut requires a plaintiff to demonstrate "(1) the requisite standard of care for treatment; (2) a deviation from the standard of care; and (3) a causal connection between the deviation and the claimed injury." *Samose v. Hammer-Passero Norwalk Chiropractic Group, P.C.*, 24 Con. App. 99, 102, 56 A.2d 614 (1991). A review of Connecticut state law reveals that Connecticut does not impose any duty to advise or warn of a product recall, or provide for any cause of action based on failure to do same.

17. It should be pointed out that even if such a cause of action did exist, there remains no possibility that -- or no reasonable basis upon which -- Plaintiff can state a cause of action against Windham for the purported negligent failure of Windham to advise or warn her that Stryker and HOC had allegedly initiated recalls of "certain Trident Hemispherical Acetabular Cluster shells", "Surgical Protocol instructions", and "Cancellous Bone Screws". Plaintiff's own Complaint and Exhibit A to her Complaint evidence that she received her Trident™ System at **St. Francis** in **December 2003**. (See Complaint at First Count, ¶ 6; id. at Exhibit A.) Plaintiff later alleges that she underwent hip aspirations at **Windham** in **September 2011** and **October 2012**. (See id. at First Count, ¶ 20; id. at Count Three, ¶ 6.) Plaintiff makes no claims whatsoever as to how or why Windham could ever be liable to Plaintiff when (1) she did not receive her Trident™ System at Windham; and (2) she offers no allegations as to how Windham could have known that she had a Trident™ System implanted in her left hip nearly eight years prior to seeking treatment from Windham.

18. Given (1) the absence of basis in Connecticut law for the assertion of a claim for the negligent failure to warn or advise of a recall, and (2) the failure to plead how Windham could warn or advise of a recall when the implant occurred at another hospital nearly eight years earlier, there is no possibility that Plaintiff can state the purported claim against Windham. Accordingly, as it is apparent that Plaintiff fraudulently joined Windham, Windham's

Connecticut citizenship should be disregarded in determining whether diversity jurisdiction exists.[3]

### B.     The Amount in Controversy Requirement is Satisfied

19.     "A party invoking the jurisdiction of the federal court has the burden of proving that it appears 'to a reasonable probability' that the claim is in excess of the statutory jurisdictional amount." United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 304-05 (2d Cir. 1994) (quotation omitted).  Where, as here, the $75,000 jurisdictional amount is not alleged[4], the Court may review the complaint to determine if the contents of the pleading indicate "that the required minimum amount in controversy exists." United Food, 30 F.3d at 305 (first reviewing allegations in complaint to determine if requisite amount in controversy existed). "Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record." Id.

20.     In the instant matter, it appears to a reasonable probability that Plaintiff will claim in excess of the $75,000 statutory jurisdictional amount. A review of the Complaint indicates that Plaintiff seeks compensatory and punitive damages for alleged injuries arising out of purported defects in her Trident™ System. (See Complaint at p.15.) Indeed, the face of the Complaint states that Plaintiff suffered the following injuries for which she seeks redress:

---

[3] In addition to the above grounds warranting a finding that Windham is a fraudulently joined defendant, Windham's citizenship should also be disregarded because Plaintiff failed to include with her Complaint (1) a certificate from her attorney stating that a "reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named [health care provider] defendant" and (2) "a written signed opinion of a similar health care provider", both of which are required by Connecticut General Statute § 52-190a(a). Such failures mandate the dismissal of a negligence action against a health care provider. See Conn. Gen. Stat. § 52-190a(c) ("The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."); Bennett v. New Milford Hosp., Inc., 300 Conn. 1, 28 (2011) ("the legislative history of § 52-190a(c) indicates that the legislature adopted that section to make clear that dismissal is the mandatory remedy when a plaintiff fails to file an opinion letter that complies with § 52-190a(a)."). Accordingly, there is no possibility that Plaintiff can state a cause of action against Windham.

[4] Plaintiff alleges "[m]oney damages in an amount greater than Fifteen Thousand and 00/100 ($15,000.00), exclusive of interest and costs...." (Complaint at p.15.)

"[I]ncreasing pain, irritation and discomfort in her left hip and groin area." (Complaint at First Count, ¶ 20.)

A hematoma requiring "a left hip aspiration". (Id.)

The presence of "infection, and metallosis from metal debris … found in and around the left Hip." (Id.)

"[P]suedotumor of her left hip". (Id. at Count Two, ¶ 27(b).)

"[D]evelopment of a limp, necessitating the use of a cane". (Id. at Count Two, ¶ 27(d).)

"[S]welling, stiffness and limitation of motion". (Id. at Count Two, ¶ 27(e).)

"[C]ontinued … pain and additional hematoma, infection, metallosis and other medical complications … resulting in necessity of a second hip aspiration". (Id. at First Count, ¶ 20)

"[C]ontinued … pain, discomfort, infection and metallosis" requiring "a complete revision Left Total Hip Arthoplasty [sic] which involved completely replacing the liner of her original Left Hip Implant with a polyethylene liner and the head of her original Left Hip Implant with a Cobalt chrome head." (Id. at First Count, ¶ 21.)

Continual "pain and discomfort in and around her left hip." (Id. at First Count, ¶ 22.)

"[M]ental anguish and distress". (Id. at First Count, ¶ 29.)

21.     Given these alleged injuries and damages, which include, inter alia, allegations of two aspirations and revision surgery, it is facially apparent from the Complaint that Plaintiff will claim in excess of $75,000 in damages. Notably, in similar defective hip implant cases, other federal courts have concluded that the amount in controversy exceeded $75,000 for injuries like those asserted here. For instance, in Milter v. Wright Med. Group, Inc., the Court held that the amount in controversy had been satisfied where the plaintiff alleged injuries regarding an

allegedly defective hip implant that he had received, including revision surgery, hospitalization, severe lytic lesions in the area of plaintiff's femur where the device had been implanted, premature loosening around the proximal femur, the corrosion of the metal components in defendants' device allegedly resulting in the presence of "extremely elevated levels of toxic metals" in plaintiff's blood, an extended period of disability, medical expenses, lost wages, and "much physical and mental pain and suffering." No. 11-cv-1153, 2011 WL 4360024, *3 (E.D. Mich. Sept. 19, 2011); see also Devore v. Howmedica, 658 F. Supp. 2d 1372, 1375-76, 1379-81 (M.D. Fla. 2009) (discussing that the plaintiff's pre-suit demand letter showed that similar injuries and medical care as those alleged by Plaintiff herein exceeded $646,000, and even where plaintiff refused to stipulate to the amount in controversy, the jurisdictional limit had been conclusively satisfied).

****

22. In sum, removal is proper pursuant to 28 U.S.C. § 1441(a) because this action is between citizens of different states; the citizenship of the fraudulently joined defendant Windham should be disregarded; and the amount in controversy exceeds $75,000, exclusive of interest and costs.[5]

### FILING OF REMOVAL PAPERS

23. Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action will be promptly served on Plaintiff's counsel.

---

[5] Even in the absence of diversity jurisdiction, removal would still be proper under federal question jurisdiction pursuant to 28 U.S.C. §1331, as Plaintiff's claims require resolution of issues premised on the application of federal law and regulations. In this regard, the Trident™ System is a Class III premarket approved ("PMA") medical device that was and is still subject to extensive regulation by the Food and Drug Administration ("FDA"). Plaintiff's Complaint raises a substantial federal question regarding preemption of Plaintiff's claims under the MDA and Riegel v. Medtronic, Inc., 128 S. Ct. 999, 1004 (2008). Accordingly, federal issues are actually in dispute, the federal issues are substantial, and the exercise of jurisdiction by this Court is consistent with congressional judgment about the sound division of labor between the state and federal courts. See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 125 S. Ct. 2363, 2366-67 (2005) (holding that federal question jurisdiction exists notwithstanding the fact that Congress did not provide a private right of action in the federal statute forming the basis of the substantial federal question).

24.     The undersigned counsel is authorized by Stryker and HOC to file this Notice of Removal, is licensed in the State of Connecticut, and is a member in good standing of the Bar of this Court.

25.     Concurrent with the filing of this Notice of Removal, Stryker and HOC have filed a Notice of Filing the Notice of Removal, including a true and correct copy of the Notice of Removal, with the Clerk of the Superior Court of the State of Connecticut, Judicial District of Windham at Putnam.  (See Exhibit D, annexed hereto.)

WHEREFORE, Defendants Stryker Corporation and Howmedica Osteonics Corp. hereby remove the above-captioned action from the Superior Court of the State of Connecticut, Judicial District of Windham at Putnam, and request that further proceedings be conducted in this Court as provided by law.

Dated: August 21, 2013

                                    Respectfully submitted,

                                    s/ Thomas N. Lyons
                                    Thomas N. Lyons
                                    Federal Bar No. ct 26937
                                    Danaher Lagnese, PC
                                    21 Oak Street, 7th Floor
                                    Hartford, Connecticut 06106
                                    Telephone: (860) 247-3666
                                    Facsimile: (860) 547-1321
                                    E-mail:  tlyons@danaherlagnese.com
                                    *Attorneys for Defendants*
                                    *Stryker Corporation and*
                                    *Howmedica Osteonics Corp.*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 21, 2013, a copy of the foregoing, was filed electronically and served by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Maria K. Tougas, Esq.
Scott+Scott, Attorneys at Law, LLP
156 South Main Street
P.O. Box 192
Colchester, Connecticut 06415
**ATTORNEYS FOR PLAINTIFF**

Donna R. Zito, Esq.
O'Brien, Tanski & Young, LLP
185 Asylum Avenue
Hartford, Connecticut 06103
**ATTORNEYS FOR CO-DEFENDANT**

                                                                  <u>s/ Thomas N. Lyons</u>