UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENISE SIMONEAU, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-1200 (JCH) |
| v. | : | |
| | : | |
| STRYKER CORP. et al., | : | MARCH 31, 2014 |
| Defendants. | : | |

**RULING RE: WINDHAM COMMUNITY MEMORIAL HOSPITAL'S
MOTION TO DISMISS (Doc. No. 16)**

**I.    INTRODUCTION**

Plaintiff Denise Simoneau brings this action in connection with a hip replacement

in December 2003 and subsequent hip aspirations in 2011 and 2012.  Although

containing multiple counts against multiple defendants, Simoneau's Complaint alleges

only one count against defendant Windham Community Memorial Hospital ("Windham")

for negligently failing to warn her of recalled implant components.[1]  Windham moves to

dismiss this count (Count Three) for lack of personal jurisdiction, insufficient process,

and insufficient service of process based on Simoneau's failure to satisfy the

requirements of section 52-190a of the Connecticut General Statutes, under which a

party bringing a medical malpractice suit must submit, inter alia, a written opinion by a

similar health care provider that supports the existence of a good faith basis.  Conn.

Gen. Stat. § 52-190a(a).  Windham moves to dismiss Count Three, in the alternative, for

failure to state a claim.

For the reasons stated below, Windham's Motion (Doc. No. 16) is **GRANTED**.

---

[1] Counts One and Two allege claims against Stryker Corporation and Howmedica Osteonics
Corporation (collectively, the "Stryker defendants"), who are not parties to this Motion to Dismiss.  The
Stryker defendants filed a separate Motion to Dismiss (Doc. Nos. 14 & 15), which the court has
addressed in a separate Ruling.

## II.      BACKGROUND[2]

In 2003, Simoneau underwent a left total hip arthroplasty at another hospital, during which she received components of the "Trident Acetabular System" ("Trident Hip Implant") designed, manufactured, and marketed by Stryker Corporation and Howmedica Osteonics Corporation (collectively, the "Stryker defendants").  Compl. (Doc. No. 1-1), Count One ¶ 6.  Subsequent to that procedure, the Stryker defendants initiated several recalls relating to the Trident Hip Implant.  Id., Count Three ¶¶ 3-5.

As pertinent to this Motion, Simoneau underwent two hip aspirations at Windham's facilities in September 2011 and October 2012, respectively.  Simoneau alleges that, at the time of these hip aspirations, Windham knew or should have known of the Stryker defendants' recalls and had a duty to warn her of such recalls and to advise her that her medical complications were possibly due to a defective Trident Hip Implant.  Id. ¶¶ 6-7.  Simoneau claims that, in failing to warn her of the recalled implant components, Windham breached its duty.  Id. ¶ 7.

## III.     STANDARD OF REVIEW

A.      Rule 12(b)(2), (4), and (5)

Upon a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendant.  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  "Where . . . a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant."  DiStefano v. Carozzi N. Am., Inc., 286 F.3d

---

[2] Further factual background is set forth in the court's separate Ruling on the Stryker defendants' Motion to Dismiss.

81, 84 (2d Cir. 2001).  "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant."  Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2008) (citations and internal quotation marks omitted).  The court reviews the "pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor."  DiStefano, 286 F.3d at 84.

The Federal Rules of Civil Procedure permit a defendant to move to dismiss for related but separate defects either in the contents of the summons or in the manner or method of service of the summons and complaint.  Fed. R. Civ. P. 12(b)(4) & (5); see 5B Charles Alan Wright et al., Federal Practice and Procedure § 1353 (3d ed. 2013).  Where service of process is challenged, the plaintiff has the burden of demonstrating the adequacy of such service.  Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010).

    B.    Rule 12(b)(6)

A case is properly dismissed under Rule 12(b)(6) if the Complaint fails to allege facts sufficient "to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009).  As articulated by the Supreme Court in Iqbal and Twombly, the standard for dismissal on a Rule 12(b)(6) motion reflects two working principles.  See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013).  First, the court's customary acceptance of all allegations in a complaint does not apply to legal conclusions.  Iqbal, 556 U.S. at

3

678.  Hence, to survive a motion to dismiss, a complaint must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Id.  Second, assuming the truth of all well-pleaded factual allegations, and drawing all reasonable inferences in the plaintiff's favor, the court must determine whether these allegations and inferences plausibly entitle the plaintiff to relief—that is, whether the complaint shows "more than a sheer possibility that a defendant has acted unlawfully."  Id.  This second task is context-specific and "requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

IV.    **DISCUSSION**

Windham moves to dismiss on two independent grounds:  (1) lack of personal jurisdiction, insufficient process, and insufficient service of process—all due to Simoneau's failure to comply with the requirements of section 52-190a of the Connecticut General Statutes; and (2) failure to state a claim.  Upon review of Simoneau's Complaint, the parties' submissions in connection with this Motion, and the pertinent case law, the court concludes that dismissal of Count Three is proper, not only because Count Three is governed by section 52-190a, whose requirements Simoneau did not satisfy, but also because Count Three fails to state a claim under Connecticut law.

A.    Section 52-190a Governs Count Three

Section 52-190a requires a plaintiff in any lawsuit resulting from the "negligence of a health care provider" to conduct "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant."  Conn. Gen. Stat. § 52-190a(a).  The plaintiff must attach to the initial pleading a certificate attesting "that such

4

reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant." Id.  To demonstrate this "good faith belief," the plaintiff must obtain and attach to the initial pleading "a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and [which] includes a detailed basis for the formation of such opinion." Id.

Section 52-190a provides, further, that "the failure to obtain and file the written opinion [of a similar health care provider] . . . shall be grounds for the dismissal of the action." Id. § 52-190a(c).  The Connecticut Supreme Court has held that, "[u]nless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction" over the defendant.  Morgan v. Hartford Hosp., 301 Conn. 388, 400 (2011) (citing Lostritto v. Cmty. Action Agency of New Haven, Inc., 269 Conn. 10, 31 (2004)).  As the Morgan Court explained, "the written opinion letter, prepared in accordance with the dictates of § 52-190a, like the good faith certificate, is akin to a pleading that must be attached to the complaint in order to commence properly the action." Id. at 398.

Windham argues that, because Simoneau failed to comply with these requirements, Count Three must be dismissed for lack of personal jurisdiction, insufficient process, and insufficient service of process.  Windham's Mot. to Dismiss (Doc. No. 16) at 1.  Specifically, Windham contends that, despite being labeled as "negligence," Count Three is governed by section 52-190a, because it alleges personal injury resulting from the negligence of a health care provider and thus sounds in medical malpractice, rather than ordinary negligence.  Windham's Mem. in Supp. of Windham's

Mot. to Dismiss ("Windham's Mem.") (Doc. No. 17) at 2.  Simoneau argues that, on the contrary, Count Three contains a simple failure to warn claim, which does not sound in medical malpractice and does not fall within the purview of section 52-190a.  Pl.'s Opp'n to Windham's Mot. to Dismiss ("Pl.'s Opp'n") (Doc. No. 53) at 1.

Whether, on the face of the pleadings, Count Three is subject to the requirements of section 52-190a is a question of law for the court, and the court "is not bound by the label affixed to that pleading by the party."  Votre v. Cnty. Obstetrics & Gynecology Grp., P.C., 113 Conn. App. 569, 576 (2009) (citation omitted); see also, Larson v. Brighten Gardens, 7:08-CV-455 (WWE), 2009 WL 103372, at *2 (D. Conn. Jan. 14, 2009) (looking past the words of plaintiff's complaint to determine under section 52-190a "whether the claim is truly one of ordinary negligence or one for medical malpractice").  Simply referring to a claim as "negligence" is not a "shibboleth" to avoid meeting the statutory requirements.  Larson, 2009 WL 103372, at *3.

Count Three alleges that, at the time of Simoneau's hip aspirations, Windham "knew or should have known that the Hemispherical Acetabular Cluster shell and the Cancellous Bone Screws had been recalled by the Stryker Defendants" and that Windham owed Simoneau a duty to warn her of these recalls and to "alert her to the possibility that it was a defective Trident Hip Implant."  Compl., Third Count ¶¶ 6-7.  Windham argues that Count Three alleges medical malpractice, not ordinary negligence, and is thus subject to section 52-190a.  See Windham's Mem. at 6.

The Connecticut Supreme Court has adopted a three-prong test to determine whether a negligence claim should be classified as medical malpractice or ordinary negligence:

> [T]he relevant considerations . . . are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment.

Gold v. Greenwich Hosp. Ass'n, 262 Conn. 248, 254 (2002) (citation and internal quotation marks omitted).

On the court's reading of the Complaint, Count Three satisfies each of Gold's three prongs, sounding in medical malpractice, rather than ordinary negligence.

First, it appears undisputed that Windham is being sued in its capacity as a health care provider.  See Pl.'s Opp'n at 5-10 (addressing only Gold's second and third prongs).

Second, Windham's alleged actions directly related to Simoneau's treatment and diagnosis and, therefore, were of a "specialized medical nature."  By alleging that Windham "owed a duty to advise and warn the Plaintiff of the aforesaid Recalls and alert her to the possibility that it was a defective Trident Hip Implant," Compl., Third Count ¶ 7, Simoneau's Complaint can reasonably be read to assert that Windham had a duty (i) to have comprehensive knowledge of the medical device surgically implanted in her hip at another medical facility, including knowledge of the recall of certain components of this device, (ii) to diagnose the implant of these recalled components as the likely cause of her then-present medical conditions, and (iii) to provide appropriate medical treatment.  Simoneau argues that there was no medical professional-patient relationship, because the hip aspiration procedures "were performed by on-call staff."  Pl.'s Opp'n at 8.  The nature of her claim suggests otherwise.  Indeed, the fact that Windham's alleged failure to warn directly involved treatment and diagnosis of

7

Simoneau's medical condition is sufficient to establish the second prong of Gold.  See, e.g., Votre, 113 Conn. App. at 577 (holding plaintiff's claim that defendants failed to consult high-risk pregnancy specialists about her pregnancy to be "of a 'specialized medical nature' because it directly involve[d] the plaintiff's medical condition").

Lastly, Windham's alleged negligence "is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment," Gold, 262 Conn. at 254.  Simoneau alleges that Windham "knew or should have known" of the recalled components, Compl., Count Three ¶ 6; failed to "alert her to the possibility" that such components were the source of her medical condition, id. ¶ 7; and, as a result, caused her "to incur damages," id. ¶ 8.  Count Three presupposes, hence, that knowledge of the recall and action by Windham in conformity with its putative duties to Simoneau would likely have altered her diagnosis and treatment.

Under Gold, Count Three sounds in medical malpractice, not ordinary negligence.  Accordingly, Simoneau was required to comply with the statutory procedures set forth in section 52-190a, and her failure to do so deprives this court of jurisdiction over her claim against Windham.

B.    Whether Count Three States a Claim

In addition, and as an alternative ground for the present Ruling, the court reiterates its holding from its prior Ruling on the Motion to Remand—namely, that Connecticut law, as predicted by this court, does not recognize a cause of action against a hospital for failure to warn of a recalled medical device.  See Ruling Re Pl.'s Mot. to Remand (Doc. No. 44) at 4-5 (citing Sherwood v. Danbury Hosp., 278 Conn. 163, 186-88 (2006)).

Quoting, with approval, <u>Johnson v. Sears, Roebuck & Co.</u>, 113 N.M. 736, 738

(Ct. App. 1992), <u>Sherwood</u> explained the rationale as follows:

> Although a hospital employee has the necessary skill and expertise to perform a procedure for which the employee has been trained, the employee does not necessarily have the requisite knowledge of a particular patient's medical history, diagnosis, or other circumstances which would enable the employee to fully disclose all pertinent information to the patient.

278 Conn. at 186.

In <u>Sherwood</u>, the Connecticut Supreme Court held that a hospital does not even

have a duty to inform a patient of the risks of a medical procedure, for the physician

ordering the procedure "'is uniquely qualified through education and training, and as a

result of his or her relationship to the patient, to determine the information that the

particular patient should have in order to give an informed consent.'" <u>Id.</u> at 187 (citation

and internal quotation marks omitted).  The Court there reasoned that "[t]o impose upon

a hospital the duty to inform would be to require a hospital to intervene into the

physician/patient relationship," a prospect "more disruptive than beneficial to [the]

patient." <u>Id.</u> at 188 (citation and internal quotation marks omitted).

Furthermore, it bears emphasizing that Simoneau did not receive the implant at

Windham.  The procedure was performed at another hospital in 2003.  <u>See</u> Compl.,

Count One ¶ 6.  The Complaint is devoid of factual allegations as to how Windham

could reasonably have warned Simoneau of a defective implant performed elsewhere

several years prior to her first visit to Windham.  Regardless of whether Windham knew

of the recall, Simoneau fails to allege how Windham reasonably could have uncovered

that the recalled components were the source of her medical condition.

9

Under Connecticut law, the duty to warn a patient about the risks of undergoing a procedure falls on the physician ordering that procedure, not on the hospital where the procedure is performed.  Count Three thus fails to state a claim.

**V.    CONCLUSION**

For the reasons set forth above, the court **GRANTS** defendant's Motion to Dismiss (Doc. No. 16).  Simoneau shall not have the right to replead Count Three absent a properly supported motion for permission to replead showing that the proposed amendment to Count Three would not be futile in light of this Ruling and the court's prior Ruling on the Motion to Remand.

**SO ORDERED.**

Dated at New Haven, Connecticut this 31st day of March, 2014.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge